**UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MIDDLEBROOK PHARMACEUTICALS, INC. | ) | Case No. 10-11485 (MFW) |
| | ) | |
| | ) | **Hearing Date: July 28, 2010** |
| | ) | **Hearing Time: 2:00 p.m. (EDT)** |
| Debtor. | ) | |
| | ) | |

**EQUITY GROUP INVESTMENT, LLC'S STATEMENT IN
SUPPORT OF ADJOURNING AUCTION AND SALE
HEARING TO FACILIATE COMPETITIVE BIDDING**

Equity Group Investments, LLC ("EGI") hereby submits this statement (the "Statement") in support of adjourning the Auction and the Sale Hearing to facilitate competitive bidding and to maximize value for stakeholders in connection with the sale of substantially all of the Middlebrook Pharmaceuticals, Inc.'s (the "Debtor") assets.[1] In support of this Statement, EGI respectfully represents as follows:

**PRELIMINARY STATEMENT**

At the Sale Hearing and subject to this Court's guidance, EGI expects that the Debtor will exercise its right under the Bidding Procedures to adjourn the Auction and other corresponding dates. EGI believes that adjourning the hearing is necessary and prudent to explore a competitive investment proposal made by EGI after the original Auction Date.

On the eve of the Sale Hearing, EGI presented a proposal to the Debtor by which EGI, the Debtor's single largest shareholder, would sponsor a plan of reorganization. In short,

---

[1] Capitalized terms used but not otherwise defined herein have the meaning ascribed in the Sale Motion and/or the Bidding Procedures Order.

EGI is proposing to invest a total of $22 million—including a $2 million bridge facility—to fund distributions to holders of claims against and interests in the Debtor. In addition, EGI will forego a cash distribution on account of its own existing common stock, and will instead exchange its existing stock for equity in the reorganized company. Upon emergence, EGI would own 100% of reorganized company's common stock. At this time, however, EGI's proposal remains nonbinding, subject to definitive documentation between EGI and a strategic partner, Lupin Pharmaceuticals, Inc. ("Lupin").

The EGI proposal is the only competitive proposal received by the Debtor since selecting Victory as its stalking-horse bidder. The Debtor did not receive any bids through the competitive procedures previously approved by this Court. Because of the significantly greater value contemplated by EGI's proposal, as explained below, EGI believes that adjourning the Auction and the Sale Hearing is proper under the circumstances. In addition, the Debtor is obligated to maximize value to its estate. On its face, EGI's proposal represents a higher and better offer than Victory's stalking-horse bid because it provides greater recoveries to the Debtor's stakeholders. Moreover, because EGI's proposal is part of a plan of reorganization—rather than a sale of substantially all assets under section 363 of the Bankruptcy Code—the EGI proposal also offers a final resolution to the Debtor's chapter 11 case.

Moreover, the proposed adjournment is necessary because EGI's ability to participate in the bidding prior to the bid deadline was limited by EGI's status as a substantial stockholder with seats on the Debtor's board of directors. EGI, an insider, was wary that active participation by it in the sale proceedings would be misconstrued and could interfere with the competitive process or otherwise deter competitive bids—particularly because potential strategic partners, such as Lupin, were also potential bidders. EGI's concerns regarding its potential

influence on the sale proceedings were alleviated, however, when no other competitive bidders materialized.

**BACKGROUND**

1. On April 30, 2010 (the "Petition Date"), the Debtor commenced a voluntary case (the "Bankruptcy Case") under Chapter 11, Title 11, United States Code (the "Bankruptcy Code"). Sections 1107(a) and 1108 of the Bankruptcy Code authorize the Debtor to operate its business and manage its properties and assets as a debtor in possession.

2. The United States Trustee for the District of Delaware (the "United States Trustee") appointed an official committee of creditors holding unsecured claims against the debtor (the "Creditors' Committee") under section 1102 of the Bankruptcy Code on May 11, 2010. No party in interest has requested the appointment of a trustee or examiner.

3. In connection with the Bankruptcy Case, the Debtor selected as a stalking horse bidder an offer received from Victory Pharma, Inc. ("Victory") to purchase substantially all of the Debtor's assets, which offer is reflected by the terms of an asset purchase agreement (the "APA"), which was executed on May 14, 2010 and attached to the Sale Motion (as defined below) filed three days later. Pursuant to the APA, Victory seeks to acquire substantially all of the assets of the Debtor for $17,100,000 plus the assumption of various liabilities of the Debtor as set forth in the APA (the "Victory Bid").

4. On May 17, 2010, the Debtor filed the Motion Pursuant to Sections 105(a), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, and 9014, and Local Rules 2002-1 and 6004-1, Requesting Entry of (I) the Bidding Procedures Order (a) Approving the Bidding Procedures, (b) Scheduling an Auction, (c) Approving the Break-up Fee, (d) Scheduling a Final Sale Hearing, and (e) Approving the Form and Manner of Notice of Auction

and Sale and Notice of Assumption and Assignment of Contracts; and (II) the Sale Order Approving the Sale of Assets, Including the Assumption and Assignment of Contracts, Free and Clear of All Liens, Claims, and Interests (the "Sale Motion") (Docket No. 64).

5. On June 9, 2010, the Court entered the Order (I) Approving Sale Procedures and Bidding Protections to be Employed in Connection with the Proposed Sale of the Debtor's Assets, (II) Scheduling an Auction and Hearing to Consider Approval of the Sale of Debtor's Assets, and (III) Approving Notice of Respective Dates, Times and Places for Auction and for Hearing on Approval of Sale of Assets and Other Related Relief (the "Bidding Procedures Order") (Docket No. 136). The Bid Procedures Order, among other things, approved the sale and bidding procedures (the "Bidding Procedures") to govern the sale of the Debtor's assets.

6. On June 23, 2010, pursuant to section 1102(a)(1) of the Bankruptcy Code, the United States Trustee appointed five people to the Committee of Equity Security Holders.

7. The Bidding Procedures Order provides the Debtor with significant flexibility, but it generally established the following deadlines and dates:

    (a) July 15, 2010 as the deadline for submitting bids (the "Bidding Deadline");

    (b) . July 22, 2010 as the date to conduct an auction (the "Auction") if the Debtor received one or more competing qualified bids (a "Qualified Bid");

    (c) July 28, 2010 as the date to commence the Sale Hearing.

All of the aforementioned dates were subject to the Debtor's right to extend or otherwise adjourn such dates, but Victory negotiated a termination right if the Approval Order was not entered on or before August 31, 2010.

8. After the Bidding Deadline but before the Auction, EGI conducted discussions with the Debtor and its investment bankers and informed them of its intent to submit a plan proposal. Because EGI's plan proposal includes working with another pharmaceutical company

4

that was identified as a potential bidder for the Assets, EGI determined to wait until after the Bidding Deadline before moving forward with its plan proposal so as not to interfere with the Debtor's marketing efforts. After continued discussions with the Debtor, on July 27, 2010, EGI submitted a plan proposal which it believes provides more value than the Victory Bid and contemplates creditors recovering in full the allowed amount of their claims and a meaningful distribution for holders of equity. The form of plan proposal is attached as <u>Exhibit 1</u> hereto (the "Plan Proposal").

9. While EGI understands that the Plan Proposal has been submitted on the eve of what would have otherwise been a straightforward Sale Hearing with no competing bidders, EGI believes that it is now appropriate to adjourn the Auction so that a full and fair competitive process can be completed to maximize value for stakeholders. In doing so, EGI requests that this Court, with the support of the Debtor, reschedule the Auction for August 12, 2010 and adjourn the Sale Hearing to a subsequent date that is acceptable to this Court, to the statutory committees, and to counsel for Victory.

**STATEMENT IN SUPPORT OF ADJOURNING AUCTION
AND SALE HEARING**

10. EGI believes that adjourning the Auction, as contemplated above, and the Sale Hearing is appropriate, is permitted by the Procedures Order, and would not breach or otherwise trigger a termination right by Victory. But EGI also understands that the Debtor is fully prepared to proceed with the Sale Hearing seeking approval of the Victory Bid; EGI does not wish the Debtor to take any action that would jeopardize the Victory Bid. For the benefit of the Debtor and out of the abundance of caution, EGI therefore seeks this Court's guidance and ruling to ensure that its interpretation of the Procedures Order and APA is consistent. In fact, EGI believes that the Debtor may be compelled to ask this Court to adjourn the Auction as a fiduciary

5

under both bankruptcy and applicable nonbankruptcy law to maximize the value received by the estate in connection with the Sale.  Nevertheless, should this Court find that either the APA or the Bidding Procedures prohibit the Debtor from adjourning the Auction or that seeking an adjournment would otherwise provide Victory with a termination right under the APA, EGI is prepared to abandon the relief sought herein.  With this qualification, the EGI states the following in support of adjourning the Auction and the Sale Hearing.

A. **Adjournment of Auction and Sale Hearing Are Permitted by the Bidding Procedures Order**

11. The adjournment of the Auction and the Sale Hearing are expressly permitted by the Bidding Procedures Order.  Specifically, the Bidding Procedures Order authorizes the Debtor, in consultation with the Creditors' Committee, to "adjourn or cancel the Auction and/or the Sale Hearing in open court or on the Court's calendar on the date scheduled for said hearing without further notice to creditor or parties in interest."  (Bidding Procedures Order ¶ 12.)  Accordingly, the Debtor is entitled to adjourn the Auction without the consent of Victory and without further court approval.

12. In furtherance of its fiduciary duty to maximize the value to the estate, as set forth more fully below, EGI understands that the Debtor intends to adjourn the Auction to August 12, 2010.  To accommodate the later Auction Date, EGI proposes to adjourn the Sale Hearing to August 18, 2010, subject to the support of the Debtor, this Court's availability and the availability of counsel to the statutory committees and Victory.  All other deadlines calibrated to the Auction Date, including the Bidding Deadline and the Sale Hearing, would be reset in accordance with the August 12, 2010, Auction Date.

## B. Adjournment Is Permitted and Does Not Give Victory a Termination Right Under the APA

13. Section 8.1 of the APA sets forth the circumstances in which Victory may terminate the APA and its obligations thereunder. The proposed adjournment of the Auction does not implicate any of Victory's termination rights. To the contrary, the APA specifically contemplates an adjournment of the Auction to facilitate one or more Competing Bids, thereby maximizing the recovery for its estate. It is for this very reason that the outside date for obtaining entry of the Approval Order is August 31, 2010.

14. It is of note, however, that under the APA, Victory may terminate its obligations if, among other things, "after its entry, the [Bidding] Procedures Order fails to be in full force and effect or has been stayed, reversed, modified, or amended in any respect without the prior written consent of the Purchaser." (APA § 8.1(f)(ii).) Nevertheless, EGI does not seek any amendment or modificationto the Bidding Procedures Order. Rather, the Debtor merely seeks to exercise those rights granted to it under the Procedures Order, which include adjourning the Auction for a short period of time to provide an adequate opportunity to explore a potential Competing Bid. As described above, adjournment of the Auction requires no amendment or modification because the adjournment is specifically authorized by the Bidding Procedures Order.

15. Also noteworthy is Victory's termination right in the event that the Debtor fails to satisfy certain covenants under the APA.[2] In particular, pursuant to section 5.1 of the APA, the Debtor is obligated to "use its commercially reasonable efforts to obtain, through the filing with

---

[2] Victory is entitled to terminate its obligations under the APA, pursuant to section 8.1(d), "if the [Debtor] breaches one or more of its covenants hereunder, such that the condition set forth in Section 6.2(b) would not be satisfied . . .[and such breach, if curable, is not timely cured]." Section 6.2(b), in turn, requires that the Debtor have performed and complied in all material respects with its obligations under, among other provisions, Article 5 of the APA.

7

the Bankruptcy Court of appropriate applications or motions, entry of the Approval Order not more than five (5) Business Days after the Auction." If the Debtor breaches this covenant, Victory may terminate the APA. Nevertheless, EGI's proposal is not inconsistent with this covenant for a number of reasons. First, the Debtor has used its commercially reasonable efforts to obtain, through various filing, entry of the Approval Order on an expedited time frame. In fact, but for the receipt of the Plan Proposal, all filings were made and the Debtor was otherwise prepared to open the Sale Hearing and seek entry of the Approval Order. However, the Plan Proposal submitted requires the Debtor, in the exercise of its fiduciary duty, to explore this alternative and to facilitate a competitive environment to maximize value for the benefit of all stakeholders.

16. Moreover, the Debtor's election to adjourn the Auction would be commercially reasonable. To ignore a potential Competing Bid—particularly in a circumstance in which no other Competing Bids were received by the Debtor and no Auction was held—may squander an opportunity to obtain a greater recovery for stakeholders. *See In re Am. Bus. Fin. Servs., Inc.*, 375 B.R. 112, 117 (Bankr. D. Del. 2007) (observing that "the test to determine 'commercial reasonableness' should be whether the sale's every aspect is characterized by: (1) good faith, (2) avoidance of loss, and (3) an effective realization" (citing *Solfanelli v. Corestates Bank, N.A.*, 203 F.3d 197, 200 (3d Cir. 2000))); *United States v. Willis*, 593 F.2d 247, 259 (6th Cir. 1979) (finding that in light of the three factors required for a commercially reasonable sale, the seller did not have absolute discretion in choosing what kind of sale to conduct because it "was limited by a good faith duty to maximize the proceeds upon sale of the collateral"). This is precisely the reason that the Bidding Procedures Order provides the Debtor the right to adjourn the Auction, in

consultation with the Committee and without notice to creditors, as late as the Sale Hearing. Exercising its right under an order of this Court is unquestionably commercially reasonable.

17. Even if the Auction had taken place, courts frequently permit debtors to reopen auctions if doing so is in the best interest of the estate. *See Corporate Assets, Inc. v. Paloian*, 368 F.3d 761, 768 (7th Cir. 2004) ("[W]here the court has not yet approved sale to a particular bidder, the court might appropriately conclude that consideration of a late bid would not unduly frustrate the reasonable expectations of the participants or compromise the integrity of the process. In that setting, financial gain for the estate and its creditors might suffice as a basis for reopening the bidding without an additional showing that the initial bids were grossly inadequate or that the original bidding was tainted by fraud or some other irregularity."); *Salazar v. Atlantic Sun*, 881 F.2d 73, 81 (3d Cir. 1989) (recognizing that the successful bidder's interests are "worthy of consideration" but noting that "the bidder at a sale is merely an offeror and has no rights to possession . . . until the court's acceptance through the confirmation process"); *In re Magna Entm't Corp.*, No. 09-10720 (MFW) (Bankr. D. Del. Oct. 16, 2009) (reopening auction where competing bidder was not permitted to participate in auction and stalking-horse bidder was not prejudiced). Thus, the Court is entitled to reschedule the Auction irrespective of the Bidding Procedures or the APA if the Court is satisfied that the circumstances described herein warrant such relief.

18. Finally, no Auction has taken place, so the five business-day clock in section 5.1 of the APA cannot yet expire. Specifically, the temporal element of section 5.1 of the APA is measured from the date of the Auction, so it is difficult to imagine how the Debtor could breach this provision in the absence of an Auction. The Bidding Procedures contemplate this result, noting that in the event that no Auction is held, the Debtor "*may* seek approval [of the Victory

9

Bid] at the Sale Hearing." (Bidding Procedures at 5 (emphasis added).) And again, an interpretation of section 5.1 of the APA that would grant Victory a termination right as a result of the adjournment sought by the Debtor would be incongruous with the paragraph 12 of the Bidding Procedures Order, which expressly authorizes such adjournment.

19. Finally, assuming, *arguendo*, that adjournment of the Auction constitutes a breach of the Debtor's covenant under section 5.1 of the APA—despite the Debtor's right and duty to do so under the APA, the Bid Procedures and applicable law—Victory has no right to terminate the APA unless such a breach is material.[3] Adjournment of the Sale Hearing until August 12, 2010 would by no means constitute a material breach of the covenant contained in section 5.1 of the APA. This is especially true in light of the fact that the APA otherwise provides Victory with the right to terminate if the Sale Order is not approved on or before August 31, 2010. Victory's right to terminate the APA if the Sale Order is not entered by this date or if the transaction contemplated by the APA is not closed by October 15, 2010 (the "Outside Date"), will not be impaired by a brief, two-week adjournment of the Auction. Moreover, section 8.1(d) of the APA provides that, even if a breach one of the Debtor's covenants were material, Victory may only terminate the APA if the Debtor fails to cure the breach within ten business days after receiving written notice thereof from. A technical, curable breach of a covenant that in no way impairs Victory's right to terminate its obligations if the Debtor fails to close the transaction by the Outside Date should not be permitted to prevent the Debtor from taking the steps necessary to maximize the value of its estate.

---

[3] Section 8.1(d) of the APA, with reference to Section 6.2(b) thereof, permits Victory to terminate only upon a material breach. *See supra* note 2.

C.  **Adjourning the Auction Facilitates the Debtor's Fiduciary Duty to Maximize Value to the Estate**

20. Adjournment of the Auction would not merely be a proper exercise of business judgment. The duties imposed on the Debtor as trustee and debtor-in-possession, as well as those duties owed by the Debtor's directors under applicable nonbankruptcy law, require the Debtor to maximize the value received from the sale of the company. *In re Reliant Energy Channelview LP*, 594 F.3d 200, 210 (3d Cir. 2010) (observing that "debtors-in-possession have a fiduciary duty to maximize the value of the estate"); *In re Mushroom Transp. Co.*, 382 F.3d 325, 339 (3d Cir. 2004) (noting that "there is no question that . . . [the debtor-in-possession] had a fiduciary duty to protect and maximize the estate's assets"); *Revlon Inc. v. MacAndrews & Forbes Holdings, Inc.*, 506 A.2d 173, 179, 182 (Del. 1986) (holding, in the nonbankruptcy context, that once a board of directors recognizes that their company is for sale, the board has a duty to "[maximize] the company's value at a sale for the stockholders' benefit"). To this end, bankruptcy courts routinely require auctions to ensure that sales maximize value to the estate, just as this Court did in granting the Bidding Procedures Order. Likewise, the APA also recognizes the Debtor's fiduciary duties and provides that "nothing herein will be deemed to prevent the Seller or the board of directors of the Seller from taking any action it is required to take to remain in compliance with applicable Law." (APA § 5.6.) Accordingly, Debtor and its directors are both obligated and permitted to exercise their fiduciary duties and explore potential Competing Bids such as the Plan Proposal.

21. If consummated, the transaction set forth in the Plan Proposal would provide stakeholders with significant value over and above the Victory Bid and would lead to the rehabilitation of the Debtor, thereby fulfilling a principal policy goal of chapter 11. *See In re Combustion Eng'g, Inc.*, 391 F.3d 190, 234 (3d Cir. 2004) (noting that the purpose of Chapter 11

is to facilitate the "reorganization and rehabilitation of the debtor as an economically viable entity"). The Plan Proposal provides for a total cash investment of $22 million, compared to $17.1 million under the Victory Bid. Moreover, EGI, the Debtor's largest single shareholder, will forego a cash distribution and instead exchange its existing shares of common stock for equity in the reorganized debtor, thereby materially increasing the cash that would be distributable to holders of equity. Indeed, the Debtor's own projections indicate that the Plan Proposal would provide a premium to existing shareholders of more than 50% over the Victory Bid.

22. Plain and simple, the terms of the Plan Proposal are higher and better than the Victory Bid. Moreover, adjourning the Auction will only further stoke competition for the benefit of the Debtor's stakeholders.

## CONCLUSION

WHEREFORE, EGI respectfully requests that the Court approve adjournment of the Auction and Sale Hearing, as set forth above, and grant such other and further relief as this Court deems just and proper.

Dated: Wilmington, Delaware
July 28, 2010

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

 /s/ Robert A. Weber
Anthony W. Clark (I.D. No. 2051)
Robert A. Weber (I.D. No. 4013)
One Rodney Square
P.O. Box 636
Wilmington, DE 19899
(302) 651-3000

- and -

Peter C. Krupp
Ron E. Meisler
Brandon M. Duncomb
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Attorneys for Equity Group Investments, LLC