# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | : Chapter 11 |
| MIDDLEBROOK PHARMACEUTICALS, INC.[1] | : Case No. 10-11485 (MFW) |
| | : Ref Docket Nos. 429, 430, & 435 |
| Debtor. | : Objection Deadline: Dec. 8, 2010, at 4:00 p.m.[2] |
| | : Hearing Date: Dec. 13, 2010, at 11:30 a.m. |

## OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF MIDDLEBROOK PHARMACEUTICALS, INC. TO CONFIRMATION OF DEBTOR'S PLAN OF LIQUIDATION

The Official Committee of Unsecured Creditors (the "**Creditors Committee**")[3] of MiddleBrook Pharmaceuticals, Inc. (the "**Debtor**"), by its undersigned counsel, hereby files this objection (the "**Objection**") to the confirmation of the Debtor's Plan of Liquidation (the "**Debtor's Plan**" or "**Plan**"). In further support of this Objection, the Creditors Committee respectfully states as follows:

### PRELIMINARY STATEMENT

1.  At the filing of this Objection, the Creditors Committee is hopeful that many, if not all of its objections to confirmation of the Debtor's Plan will be resolved. However, unless and until the Plan is amended to reflect the Creditors Committee's concerns, the Creditors Committee is compelled to preserve and protect its objections.

---

[1] The last four digits of the Debtor's taxpayer identification number are 8264. The Debtor's mailing address is 7 Village Circle, Suite 100, Westlake, Texas 76262.

[2] The objection deadline was extended for the Creditors Committee by agreement of the Debtor.

[3] All capitalized terms not defined herein shall have the meaning ascribed to them in the Plan and Plan Supplement.

## BACKGROUND

2.  On April 30, 2010 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the District of Delaware.

3.  On May 11, 2010, the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") formed the Creditors Committee in the above-captioned bankruptcy case (the "**Bankruptcy Case**"), which committee in turn retained the undersigned legal counsel.

4.  On June 24, 2010, the U.S. Trustee appointed an official committee of equity security holders (the "**Equity Committee**") in this Bankruptcy Case.

5.  Prior to the Petition Date, the Debtor was a pharmaceutical company that was in the business of developing and marking anti-infective drugs. The Debtor, shortly after the Petition Date, filed motions both seeking to sell substantially all of the Debtor's assets and to implement an incentive program for certain of the Debtor's management and non-management employees (the "**Incentive Plan**"), including Brad Cole, MiddleBrook's general counsel. See Motion Pursuant to Sections 105(a), 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006 and 9014, and Local Rules 2002-1 and 6004-1, Requesting Entry of (I) the Bidding Procedures Order and (II) the Sale Order Approving the Sale of Assets, Including the Assumption and Assignment of Contracts, Free and Clear of all Liens, Claims, and Interests [D.E. 64]; Motion of the Debtor for an Order (I) Approving the MiddleBrook Incentive Plan and (II) Authorizing Payments Thereunder Pursuant to Sections 105(a), 363(b) and 503(b) of the Bankruptcy Code [D.E. 63].

6. On or about July 12, 2010, the Court, over the objections of the Creditors Committee, entered an order approving the Incentive Plan. See Order Approving the MiddleBrook Employee Incentive Plan and Authorizing the Payments Thereunder Pursuant to Sections 105(a), 363(b) and 503(c) of the Bankruptcy Code [D.E. 193]. The Creditors Committee objected to this relief because, among other reasons, the Incentive Plan as structured by the Debtor keys incentive payments to the distributions to equity security holders in this Bankruptcy Case, and thus, incentivizes the participants, who control the claims objection process in the Bankruptcy Case, to direct costly and potentially unwarranted attention to the claims objection process, even if the estate's interests would be better served by pursuing reasonable settlements and prompt distributions to creditors. See Exhibit A to Order Approving the MiddleBrook Employee Incentive Plan and Authorizing the Payments Thereunder Pursuant to Sections 105(a), 363(b) and 503(c) of the Bankruptcy Code [D.E. 193]; Objection by the Official Committee of Unsecured Creditors to Revised Employee Incentive Plan Submitted as Notice of Filing of an Amended Exhibit A and Form of Order to the Motion of the Debtor for an Order (I) Approving the MiddleBrook Employee Incentive Plan and (II) Authorizing Payments Thereunder Pursuant to Sections 105(a), 363(b) and 503(b) of the Bankruptcy Code, ¶ 12 [D.E. 179].

7. On or about July 28, 2010, the Court entered an order approving the sale of substantially all of the Debtor's assets to Victory Pharma, Inc. ("**Victory**"). This sale closed on July 30, 2010 and generated cash proceeds in excess of $17 million. Since the close of the Victory sale, the Debtor has conducted no business other than liquidation activities, including objecting to various claims of creditors filed in this Bankruptcy Case.

8.  The Debtor's exclusive periods to file and solicit acceptances of a Chapter 11 plan, were originally scheduled to expire on August 27, 2010 and October 27, 2010, respectively, and were extended by motion of the Debtor and consent of the Equity Committee and Creditors Committee to November 23, 2010.

9.  On November 4, 2010, the Debtor filed its Plan of Liquidation (the "**Plan**") and Disclosure Statement for the Debtor's Plan of Liquidation. On November 29, 2010, the Debtor filed the Plan Supplement, which consists of a draft Plan Administrator Agreement and the Plan Committee Agreement.

10. On November 8, 2010, the Court entered an order approving certain Plan procedures and set December 13, 2010 at 11:30 a.m. as the date and time for a combined hearing to consider confirmation of the Plan and approval of the Disclosure Statement.

11. On November 19, 2010, the Debtor files its second motion to extend the exclusive periods to file and solicit a Chapter 11 plan from November 23, 2010 to January 24, 2011 [D.E. 453]. The Creditors Committee and the Equity Committee each filed objections to this request for a second extension [D.E. 480 and 489]

## OBJECTION

12. The Creditors Committee's primary objective in this Bankruptcy Case has been to ensure maximum payment to allowed unsecured claims as promptly as possible. Toward this end and based upon the Debtor's representations that general unsecured creditors will receive payment in full of their allowed claims plus interest under a plan that would be confirmed before year's end and that substantially all distributions would be made to allowed unsecured claims in full before the end of 2010, the Creditors Committee has generally not opposed the Debtor's pre-

confirmation claims adjudication efforts and has sought to aid the Debtor and the Equity Committee in resolving their issues in dispute.

13. Currently, the Plan contains several provisions that improperly and unduly limits and delays full distributions to unsecured creditors, and which renders the Plan unconfirmable with their inclusion. These defects include both specific provisions, such as an absence of firm dates for making distributions to allowed unsecured claims and the failure to provide for appropriate interest to such claims, as well as structural problems, including the failure to properly reserve amounts for unsecured creditors and a post-confirmation structure that improperly disenfranchises unsecured creditors from meaningful post-confirmation oversight. These provisions should be corrected as set forth herein prior to Plan confirmation.

(a) <u>The Effective Date and Distributions to Unsecured Creditors</u>

14. The Debtor's Plan as currently drafted provides that distributions to unsecured creditors will occur within 20-days of the Effective Date, but permits the Debtor to indefinitely delay such distribution by delaying the occurrence of the Effective Date. Section 6.4 of the Plan provides that the Debtor shall file an Initial Allowed Class 3 Claim List by the Effective Date, and that the claims on such list will be paid if no objections are filed within 20 days after the Effective Date. However, section 8.2 of the Plan conditions the Effective Date on effectuation or execution of "all other actions, documents, and agreements reasonably determined by the Debtor to be necessary to implement the Plan." Under the Plan, then, the Debtor has the sole discretion to determine what actions, documents, and agreements are needed to "implement" the Plan and thus, has the sole discretion to determine when the Effective Date will occur.

15. In fact, there is no need to permit objections to scheduled and filed claims beyond the confirmation date. The Debtor, indeed all parties, has had many months to examine and object to the claims scheduled and filed in this Bankruptcy Case. Based upon information and

{BAY:01694499v1}                                5

DSMDB-2870101v1

belief, the Debtor has objected to all scheduled and filed claims but a handful, which the Committee understands will be or could be filed prior to the scheduled Plan confirmation hearing.[4] Therefore, there no reason for an additional period of time to file objections to pending claims. In fact, allowing such time invites mischief. The Debtor was in the best position to raise claims objections, which it has done. There is no need to provide any party additional time to raise objections after confirmation, unless it applies to claims that are filed after confirmation such as lease rejection damage claims.

16. At the bottom, the Plan should not be confirmed in its present iteration because provides no date certain by which unsecured creditors, who have been awaiting distributions in this liquidating case for several months, will be paid and, creates additional uncertainty through an unnecessary post-confirmation objection process. See, e.g., In re Yates Development, Inc., 258 B.R. 36, 43 (Bankr. M.D. 2000) (holding that a Chapter 11 plan with a delayed and contingent effective date and where the creditors bear all the risk of delay does not provide for adequate means of implementation under section 1123(a)(5) of the Bankruptcy Code and cannot be confirmed under 1129(a)(1)). See also In re Central European Industrial Development Co., LLC, 288 B.R. 572, 578 (Bankr. N.D. Cal. 2003) (holding that the court could not confirm a hypothetical plan that holds the effective date indefinitely).

17. Accordingly, the Creditors Committee avers that the Court should (i) strike any provisions of the Plan, including the relevant provisions of sections 1.2 and 6.11,that provide for post-confirmation objection to pre-confirmation scheduled or filed claims; (ii) provide that distributions will be made to all Class 3 unsecured claims on the Effective Date other than Class 3 claims to which an objection has been filed and remains pending as of the Effective Date; and

---

[4] Indeed, the Debtor has already objected to the claim of Par Pharmaceutical, Inc. ("**Par**") [D.E. 320] and filed three omnibus objections to claims [D.E. 385, 421, 437].

(iii) that limits the conditions the Effective Date to only the Confirmation Order becoming a Final Order.

(b) The Plan Committee

18. The Plan (and Plan Supplement), proposes that the assets of the Debtor be administered by and distributed by a Plan Administrator selected by the Debtor and supervised by a Plan Committee. See Plan, sections 5.6 (stating that the Debtor will select the Plan Administrator with consultation of the Equity Committee and the Creditors Committee) and section 5.16 (providing that the Debtor may elect for a Plan Committee with consultation of the Equity Committee and the Creditors Committee); Plan Supplement. The Debtor has selected Ronald Glass of GlassRatner as the Plan Administrator, and has selected Brad Cole as its Plan Committee representative.

19. The Debtor did not consult with the Creditors Committee prior to selecting Mr. Glass as the Plan Administrator. Notwithstanding, the Creditors Committee does not oppose the selection of Mr. Glass, provided the Committee receive information concerning his proposed rates.

20. However, the Creditors Committee is compelled to object to the Plan as drafted in that it bars general unsecured creditors from meaningful representation and oversight over Plan implementation and the Plan Administrator (including meaningful rights to compel timely distributions if necessary) during the period that unsecured claims remain pending and unpaid. To underscore the need for a more robust monitoring by the Creditors Committee of the Plan Administrator, the Debtor's estimate in its Disclosure Statement of the amount of unsecured claims is $10.6 million. See Disclosure Statement, p. 8. This amount does not include contingent, unliquidated and yet to be filed claims (such as lease rejection claims) nor does such amount account for interest payable, and currently outstanding administrative expenses. The

{BAY:01694499v1}　　　　　　　　　　　　　　　7

DSMDB-2870101v1

Debtor projects that approximately $15 million will be placed with the Plan Administrator if the Effective Date occurs this year. Although the Debtor seeks to assure the Court that sufficient funds will remain to pay all unsecured creditors in full with interest, the Court must assure that this occurs by requiring appropriate unsecured creditor oversight of the Plan consummation.

21. Under the Plan, each Plan Committee Member has one vote and neither the Plan nor the Plan Supplement provides for any independent standing for a Plan Committee Member to enforce any provision of the Plan or the Plan Documents. Because both the Debtor's designee (due to his participation in the Incentive Plan) and the Equity Committee's designee, have interests in maximizing distributions to their constituents, including at the expenses of unsecured claims to which objections are or will be pending, the unsecured representative will have no recourse to enforce the unsecured creditors rights in the face of the voting block of the Debtor's and Equity Committee's respective designees.

22. The Plan further seeks to skew the unsecured representation on the Plan Committee by limiting who may serve on the Plan Committee. The Plan, for example, seeks to prohibit a creditor holding a Disputed Claim from serving as the Creditor Committee designee. See Plan, section 5.14. The creditors with the knowledge and best incentive to serve on the Plan Committee are the remaining members of the Creditors Committee – Par and Seneca Meadows Corporate Center II, L.L.C – who hold among the largest claims in the Bankruptcy Case and whose claims are subject to objection (Par) or will be subject to objection (Seneca II). The Plan compounds this defect by providing Plan Committee members serve without compensation.

23. The Bankruptcy Code's requirement of good faith requires "fundamental fairness" in a plan sought to be confirmed. See In re Coram Healthcare Corp., 271 B.R. 228, 234 (Bankr. D. Del. 2001) (the most important feature in determining the existence of good faith is

"the fundamental fairness" of the Plan). The provisions of the Plan regarding the governance of the Plan Committee does not meet the good faith standard under section 1129(a)(3) of the Bankruptcy Code, and the Plan should not be confirmed with these provisions intact. Cf. In re ACandS, Inc., 311 B.R. 36, 42-43 (Bankr. D. Del. 2004) (holding that a plan does not meet the good faith standard due to the dominance of a party in the debtor's affairs and actions and its continuing influence on the post-position committee); Coram Healthcare, 271 B.R. at 238 (holding that conflicts of a debtor's principal renders the plan unconfirmable under section 1129(a)(3)).

24. In order to correct these deficiencies, the Creditors Committee avers that no Plan should be confirmed unless it contains the following corrections: (i) until distributions are made in full to all Allowed Class 3 Unsecured Claims, unsecured creditors will comprise two of the three Members of the Plan Committee; (ii) the Creditors Committee may designate any person or entity of its choosing to serve as its Plan Committee Member; (iii) Plan Committee Members shall be entitled to fair and reasonable compensation for their services on the Plan Committee, based upon an hourly rate scale; and (iv) the Plan Committee will have direct oversight on the actions of the Plan Administrator.

(c) Reserved Funds

25. The Plan, as currently drafted, requires the Plan Administrator to reserve for unsecured claims that do not currently constitute Allowed claims under the Debtor's Plan. For example, under section 6.11 of the Plan, the Plan Administrator is required to reserve funds for all Disputed Claims in an amount equal to the face value of each Disputed Claim, except that in the case of a claim for indemnity by a former director or officer of the Debtor (an "**Indemnity Claim**"), the Plan Administrator will reserve an amount equal to the aggregate deductible payment(s) on the Debtor's applicable insurance policies.

26. The Plan, however, does not provide for any safeguards to ensure that funds will remain secured (i.e. placed in a lockbox) to pay creditors holding Disputed Claims in full, because the Plan neither requires the reserved funds to be segregated nor earmarked for the payment of such Disputed Claims. Additionally, the Plan does not require the Plan Administrator to reserve additional funds for additional claims that may be filed, such as those for rejection claims for which the claims bar date have not passed.[5] Absent correction of these flaws, the Plan cannot meet the requirements of section 1129(a) and cannot be confirmed.

27. A simple way to correct these problems is for the Plan to require the reservation sufficient funds to pay all Disputed Claims in full with applicable interest (or in the case of Indemnity Claims, the full deductible payments) as well as an estimated amount sufficient to pay claims that may be filed and allowed after the Effective Date, with such funds to be held in one or more interest-bearing accounts segregated and earmarked for the payment of claims only. Upon information and belief, most if not all the contingent and unliquidated claims are employee or indemnity claims for which the reserve will be limited to the insurance deductible. To further eliminate uncertainty, the Plan at section 6.13 should also be modified to require that the Plan Administrator seek estimation, for the purpose of distribution or reservation, of contingent or unliquidated Claims no later than 30 days from the Effective Date.

    (d)    Default Rate Interest

28. This Bankruptcy Case is one of a solvent Debtor in which significant distributions are anticipated to the Debtor's equity security holders. The Debtor's Plan at section 3.2(c)

---

[5] The Creditors Committee is aware of the objection filed by Riverside Claims, LLC to confirmation of the Debtor's Plan on the ground that the Plan does not provide for the payment of late filed claims [D.E. 490] and appreciates the concerns raised in this objection. The Creditors Committee believes that the Plan, with the reserve issue resolved as addressed above, should permit payment of late filed, Allowed Claims to the extent permissible under applicable law. For example, section 1.2 of the Plan defines "Allowed" claims as, inter alia, those to which no objection has been filed within the later of (i) 60 days after the Effective Date or (ii) 60 days after filing of such Claim, and section 6.4 expressly provides for payment of claims that become Allowed after the Initial Distribution Date.

provides that interest will be paid on each General Unsecured Claim at either the non-default contact rate and if none is stated, then the federal judgment rate then prevailing. The Creditors Committee is informed, however, that certain creditors hold claims to which default contract rates are applicable. These creditors should be awarded default rate interest in addition to the principal amount of their claims. See In re Dow Corning, 456 F.3d 668, 679-80 (6th Cir. 2006) (noting that where a debtor is solvent, the role of the Court is to enforce the prepetition contract between the parties, and concluding that the general presumption is that the default interest rate should be allowed) (citing cases).

29. Given the circumstances of this solvent debtor case, the Creditors Committee respectfully requests that the Court require the Debtor to modify the Plan to permit creditors holding claims to which default rate interest are applicable to recover such interest. See In re Coram Healthcare, 315 B.R. 321 (Bankr. D. Del. 2004) (holding that the specific facts of each case will determine what interest rate should be paid).

## **RESERVATION OF RIGHTS**

30. The Creditors Committee reserves all rights to raise additional arguments and objections to the Plan and the Plan Supplement, including any amendments thereto, either at or prior to the Confirmation Hearing.

WHEREFORE, for the reasons set forth above, the Creditors Committee respectfully requests that the Court enter an order: (i) sustaining the Creditors Committee's Objection; and (ii) granting such other and further relief to the Creditors Committee as the Court deems just and proper.

{BAY:01694499v1}     11

DSMDB-2870101v1

Dated: December 8, 2010
Wilmington, Delaware

Respectfully submitted,

BAYARD, P.A.

*/s/ GianClaudio Finizio*
Neil B. Glassman (No. 2087)
GianClaudio Finizio (No. 4253)
222 Delaware Avenue, 9th floor
Wilmington, Delaware 19801
Tel.: (302) 655-5000
Fax: (302) 658-6395

Sam J. Alberts *(admitted pro hac vice)*
Mary Kim *(admitted pro hac vice)*
DICKSTEIN SHAPIRO LLP
1825 Eye Street, N.W.
Washington, D.C. 20006
Tel: (202) 420-3616
Fax: (202) 379-9374
Email: albertss@dicksteinshapiro.com
Email: kimm@dicksteinshapiro.com

*Counsel for the Official Committee of Unsecured Creditors*